UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBRA CITRO,**<br><br>Plaintiff,<br><br>v.<br><br>**WHITE BEECHES GOLF & COUNTRY CLUB**, a New Jersey not-for-profit Corporation; **PATRICK PAOLELLA; FRED PIERONI; CHARLES ALBERTA; E. CARTER CORRISTON; CARMINE IDONE; GARY VASSALLO; ROBERT SILVESTRI; NELSON MAIONE; JAMES FLYNN; C. JOHN MILIOTIS; EDWARD COMEAU; GUS DOVI; ERIC LANGSLET; DILIO DiPASQUALE; RONALD BOZZO;** and the **BOROUGH OF HAWORTH,** A New Jersey Municipal Corporation,<br><br>Defendants. | CASE NO.: 05-1792 (JAG)<br><br>*FIRST AMENDED COMPLAINT and JURY DEMAND* |

Plaintiff, complaining of Defendants says,

## PARTIES

1. Plaintiff Debra Citro resides at 25 Falling Waters, Oakland, Bergen County New Jersey.

2. Defendant White Beeches Golf & Country Club ("the Club") is, upon information and belief, a New Jersey not-for-profit corporation and is located at 70 Haworth Drive, Haworth, Bergen Country, New Jersey.

3. Defendant Borough of Haworth is a New Jersey municipal corporation, having a principal office at 300 Haworth Avenue, Haworth, Bergen County, New Jersey.

4. Defendants Patrick Paolella; Fred Pieroni; Charles Alaberta; E. Carter Corriston; Carmine Idone; Gary Vassallo; Robert Silvestri; Nelson Maione; James Flynn; C. John Miliotis; Edward Comeau; Gus Dovi; Eric Langslet; Dilio DiPasquale and Ronald Bozzo are all of the Board of Governors of the Club ("the Governors").

5. Carlo Olrando is Plaintiff's former husband.

## FACTUAL ALLEGATIONS

6. The Club operates a recreational facility located in Haworth, New Jersey which includes a golf course, a swimming pool, a restaurant and bar, locker rooms, a card and pool room, a function room and pro shop.

7. The Governors control the business and the property of the Club.

8. At all times relevant, the Club held, and still holds, a liquor license issued by the Borough of Haworth.

9. From time-to-time the Club rents or lends out its golf course for special events such as charitable tournaments operated by non-member organizations.

10. The Club provides catering services and alcoholic beverages to members of the general public who rent its function room under the nominal sponsorship of a Class A member.

11. The Club's pro shop is open to the public, and the Club's golf pro provides lessons to the general public on the Club's golf course.

12. On information and belief, the Club derives significant revenue from the general public.

13. By virtue of holding a liquor license, and various other activities, the Club is a place of public accommodation within the meaning of NJSA 10:5-5(v).

14. The Club maintains various categories of membership which provide different levels of access to the Club facilities. These include, inter alia:

a) Class A, which has "full rights and privileges to the Club and its property." Class A members can vote. Prior to 1999, only men could be Class A members. Since 1999, a married heterosexual couple could designate which spouse would hold the membership. There are only (2) female Class A members out of 250.

b) Special, "those persons awaiting elevation to Class A status." They cannot vote, but have all other privileges of Class A members.

c) Lady Associate, "wives of Class A and Special members."

d) Lady Special, "widows of Class A members" and, under certain circumstances, divorced wives of Class A members.

e) Junior, "Unmarried sons, stepsons, daughters and stepdaughters living at home, until the age of 22."

There is no category of membership for a male spouse of a female Class A member.

15. In order to make available reasonable opportunities to play golf, as well as to limit wear and tear on the golf course, the Board of Trustees has capped the category of membership that provides the most access to the golf course at 250 members. At the present

time, the category of membership that provides the most access to the golf course is called "Class A" Membership. New "Class A" Members are supposed to be admitted only as old members leave.

16. In or about 1985, Plaintiff became a Lady Associate Member of the Club when her first husband Edward Citro became a Class A Member.

17. Edward Citro passed away in 1993.

18. When Edward Citro passed away, Plaintiff's membership status automatically converted to a Lady Special by operation of the Club's bylaws.

19. Carlo Orlando was a Class A member of the Club for many years, until early 2005. He held this status despite the fact that he was a convicted felon, having been convicted on federal charges and served time on house arrest. Upon information and belief, this fact was known within the Club and among the Governors.

20. Plaintiff married Orlando in 1997. As a consequence of that marriage, Plaintiff's membership automatically converted back to Lady Associate membership.

21. From 2002 through 2004 Orlando engaged in a course of domestic violence directed against Plaintiff. Some of those acts occurred at the Club. He was convicted of acts of domestic violence and was incarcerated as a result.

22. Plaintiff commenced divorce proceedings against Orlando in 2002. The divorce became final in Fall, 2003.

23. As a result of that divorce, the Club determined that Plaintiff's membership was terminated.

24. Before and after her divorce, Plaintiff attempted to convert her membership back to a Lady Special, as provided by the Bylaws.

25. In or about 2002 or 2003, the Club's bylaws were amended to allow the divorced spouse of a Class A member to return to a Lady Special status, with an ex-husband's consent to his former wife's admission to membership. There is no reciprocal provision for a divorced male to obtain consent from his Class A member ex-wife for membership.

26. Orlando refused his consent to Plaintiff's initial application, and as a result, Plaintiff could not assume Lady Special membership status.

27. Orlando is a convicted felon, having been convicted on federal charges in the early 1990's. This disqualifies him for membership.

28. In or about May, 2004, the Superior Court of New Jersey, Chancery Division, Family Part, entered an Order compelling Orlando to consent to Plaintiff's application for membership to the Club.

29. On or about June 25, 2004, and despite Orlando's enforced Consent, the Governors voted to deny Plaintiff's application to the Club. Simultaneously, they allowed Orlando to retain his membership. The vote was secret, and Plaintiff does not know who among the Governors voted for or against her membership.

30. The Governors wrote to Plaintiff, and advised her that this denial was based on the prior history of Orlando's domestic violence towards Plaintiff.

31. Upon information and belief Orlando was a member of the Board of Governors 1997-2002. On information and belief Orlando conspired with the Governors, or some of them, to prevent Plaintiff from gaining membership.

32. Plaintiff is a member of a protected class, Females, under both LAD and federal civil rights statutes.

33. Plaintiff has a right under the First Amendment and **Article 1, § 1**, of the New Jersey Constitution to associate with the other members of the Club; and under **Article 1, § 5** of the New Jersey Constitution and **LAD, NJSA 10:5-4** *et seq*, to be free of gender discrimination in places of public accommodation.

34. The Club has discriminated against Plaintiff on the basis of gender.

35. The Club has violated Plaintiff's right of association on the basis of gender.

36. The Club has discriminated against Plaintiff on the basis of her status as a victim of domestic violence.

37. The vast majority of victims of domestic violence are women. Therefore, discrimination against victims of domestic violence is inherently gender-based discrimination. This has been recognized by the federal government in enacting **42 USC 13981**, and by the State of New Jersey in enacting various laws which, *inter alia*, make domestic violence a specific crime, extend special zoning considerations to shelters for victims of domestic violence, and impose special taxes to benefit victims of domestic violence.

38. The actions of the Club and the Governors have had a disparate impact on women.

39. The actions of the Club are directed and controlled by the Governors.

40. The Club has a long standing policy, incorporated in its rules of limiting the "tee times" (i.e., the time at which one can commence a round of golf) for women (other than the two (2) female Class A members) and children to certain hours that are not particularly desirable.

41. The Club has facilities, notably The Men's Grill Room, and card rooms which are limited to men. There are no equivalent facilities for women. Said facilities are part of the licensed premises.

42. Plaintiff was harmed, and limited in her enjoyment of a public accommodation, by these limitations.

## FIRST CAUSE OF ACTION

43. Voting by the Governors on the decision not to extend Plaintiff a Lady Special membership was secret.

44. Orlando and Governors or some of them, conspired against Plaintiff contrary to **42 USC 1985** to deprive her of her civil right to associate with the other members of the Club, and to be free of gender based discrimination.

45. The actions of the Governors are attributable to the Club.

WHEREFORE, Plaintiff demands judgment pursuant to **42 USC 1985** on this Count against all Defendants other than the Borough of Haworth and any Governors who voted for Plaintiff's membership, jointly and severally, for damages, costs of suit and counsel fees.

## SECOND CAUSE OF ACTION

46. The actions of the Club and the Board of Governors in denying Plaintiff membership was contrary to **NJLAD, NJSA 10:5-4**.

WHEREFORE, Plaintiff demands judgment on this Count pursuant to **NJSA 10:5-4** all Defendants other than the Borough of Haworth and any Governors who voted for Plaintiff's membership, jointly and severally, for damages, costs of suit and counsel fees.

## THIRD CAUSE OF ACTION

47. The conduct of the Club, in limiting the tee times of women members and excluding them from the Men's Grill and card room, violated **NJLAD, 10:5-4**.

WHEREFORE, Plaintiff demands judgment on this Count enjoining the Defendants, other than the Borough of Haworth, from excluding women members from The Mens Grill and card room; and in limiting tee times; and for counsel fees and costs of suit.

## FOURTH CAUSE OF ACTION

48. Defendant Borough of Haworth violated Plaintiff's civil rights, and the civil rights of others similarly situated, in granting a liquor license to Defendant White Beeches.

WHEREFORE, Plaintiff demands judgment on this Count, enjoining Defendant Borough of Haworth from renewing the liquor license held by the Club so long as it discriminates on the basis of gender in its membership or in the licensed premises.

Dated: March 31, 2005

*Lydia B. Cotz*
Lydia B. Cotz
180 Franklin Turnpike
Mahwah, NJ 07430
Phone 201-512-9961
Fax    201-512-9963

## JURY DEMAND

Plaintiff demands trial by jury on all issues.

                                                    _____
                                                    Lydia B. Cotz